## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MARC IRWIN SHARFMAN M.D., P.A., a )
Florida corporation, individually and as the )
representative of a class of similarly-situated )
persons, )
                                  )
            Plaintiff, )    Civil Action No:
                                  )
            v. )    **CLASS ACTION**
                                  )
BIOSERENITY INCORPORATED and )
SLEEPMED INCORPORATED, Delaware )
corporations, )
                                  )
          Defendants.

## CLASS ACTION COMPLAINT

Plaintiff, MARC IRWIN SHARFMAN, M.D., P.A. ("Plaintiff"), brings this action on

behalf of itself and all others similarly situated, through its attorneys, and except as to those

allegations pertaining to Plaintiff or its attorneys, which allegations are based upon personal

knowledge, alleges the following upon information and belief against Defendants,

BIOSERENITY INCORPORATED and SLEEPMED INCORPORATED ("Defendants")

## PRELIMINARY STATEMENT

1.     This case challenges Defendants' practice of sending unsolicited facsimiles.

2.     The federal Telephone Consumer Protection Act of 1991, as amended by the Junk

Fax Prevention Act of 2005 ("JFPA"), 47 USC § 227 (hereafter "TCPA" or the "Act"), and the

regulations promulgated under the Act, prohibit a person or entity from faxing or having an agent

fax advertisements without the recipient's prior express invitation or permission. The TCPA

provides a private right of action with statutory damages of $500 per violation.

3.      On or about March 24, 2020, Defendants sent Plaintiff an unsolicited fax advertisement in violation of the TCPA ("the Fax"), a true and correct copy of which is attached hereto as Exhibit A, and made a part hereof. Upon information and belief, Defendants sent the Fax and other facsimile transmissions of unsolicited advertisements to Plaintiff and the Class in violation of the TCPA. The Fax describes the commercial availability and/or quality of Defendants' property, goods or services, namely, Defendants' AccuSom® home sleep test, a product produced by Defendants and used to further its sleep health services. (*See* Exhibit A).

4.      Plaintiff alleges on information and belief that Defendants have sent, and continues to send, unsolicited advertisements via facsimile transmission in violation of the TCPA, including but not limited to the advertisement sent to Plaintiff.

5       Unsolicited faxes damage their recipients. The recipient of an unsolicited fax advertisement loses the use of its fax machine, paper, and ink toner. An unsolicited fax advertisement wastes the recipient's valuable time that would have been spent on something else. Unsolicited fax advertisements intrude into the recipient's seclusion, violates the recipient's right to privacy, occupy fax lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

6       On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendants under the TCPA. Plaintiff seeks to certify a class which was sent the Fax or substantially similar faxes without prior express invitation or permission and without compliant opt-out language (to the extent the affirmative defense of established business relationship is alleged). Plaintiff seeks statutory damages for each violation of the TCPA and injunctive relief.

7.      Plaintiff is informed and believes, and upon such information and belief avers, that this action is based upon a common nucleus of operative facts because the facsimile transmissions at issue were and are being done in the same or similar manner. This action is based on the same legal theory, namely, liability under the TCPA. This action seeks relief expressly authorized by the TCPA: (i) injunctive relief enjoining Defendants, its employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from sending unsolicited advertisements in violation of the TCPA; and (ii) an award of statutory damages in the minimum amount of $500 for each violation of the TCPA, and to have such damages trebled, as provided by § 227(b)(3) of the Act in the event willfulness in violating the TCPA is shown.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

9.      This Court has personal jurisdiction over Defendants because Defendants transacts business within this judicial district, have made contacts within this judicial district, and/or have committed tortious acts within this judicial district.

## PARTIES

10.     Plaintiff, MARC IRWIN SHARFMAN, M.D., P.A., is Florida corporation with its principal place of business in Longwood, FL.

11.     Defendants, BIOSERENITY INCORPORATED and SLEEPMED INCORPORATED, are Delaware corporations.

12.     BioSerenity is a medical technology company focused on healthcare as a service and real world evidence in neurology, sleep medicine, and cardiology.  In 2019, BioSerenity

acquired U.S. based company SleepMed through which BioSerenity provides remote diagnostic

services and sleep health services.[1]

## FACTS

13.    On or about March 24, 2020, Defendants sent an unsolicited facsimile to Plaintiff

using a telephone facsimile machine, computer, or other device.  *See* Exhibit A.

14.    The Fax states, in part, as follows:

### ACCUSOM HOME SLEEP TEST

At BioSerenity our first commitment is to ensure the safety of our staff and the patients
we serve.  We are acting swiftly and efficiently to provide the necessary diagnostic and
health monitoring services for patients, practices, and health facilities overcoming the
Covid-19 Pandemic…

BioSerenity (formerly NovaSom) offers the AccuSom® device to diagnose sleep apnea
and identify respiratory distress…

**DEVICE:**  AccuSom® is comprised of a recorder and accessories.  Accessories that
interface directly with the patient (airflow, canula, pulse oximeter, respiratory belts) are
all **single** use.  The recording device, which has limited patient interface and no direct
respiratory contact, is thoroughly **cleansed** and **disinfected** with EPA disinfectants as
directed by the CDA for Coronavirus disinfection.

(Exhibit A).

15.    An opt-out[2] is included at the top of the Fax, which provides:

You are receiving this facsimile because we have an "Established Business Relationship" with your practice and/or you have previously
and voluntarily provided your facsimile number to us   You may request that we not send you any additional future facsimiles and that
failure to comply with such a request within 30 days in unlawful. You may contact us toll free at **(833-998-1549)** or fax toll free at
**(866) 216-5200** to opt out   Please provide us with your practice group name and facsimile number at anytime 365/24 hours a day to opt
out. We are a health care provider and provide information and reports via facsimile if requested by a practice group

The opt-out is not clear and conspicuous, does not state that the methods provided are the only

way to make a valid opt-out request, does not state that a request complies with the Act only if

"the person making the request has not, subsequent to such request, provided express invitation

---

[1] Information obtained from www.bioserenity.com, last visited July 6, 2020.

[2] A notice which informs the recipient of a fax advertisement as to how to contact the fax sender in order
to inform the sender to stop sending the recipient fax advertisements.

or permission to the sender, in writing or otherwise, to send such advertisements to such person at such telephone facsimile machine." 47 U.S.C. § 227(b)(2)(E)(iii), and does not identify the sender.

16.     At the bottom of the Fax are the trademarks for both BioSerenity and SleepMed. *See* Ex. A.

17.     The Fax advertises the commercial availability and/or quality of Defendants' AccuSom home sleep test.

18.     The Fax further touts Defendants' overall services in that Defendants claims to have acted "swiftly and efficiently to provide the necessary diagnostic and health monitoring services for patients, practices, and health facilities overcoming the Covid-19 pandemic."

19.     Defendants created or made Exhibit A, or directed a third party to do so, and Exhibit A was sent by or on behalf of Defendants with Defendants' full knowledge and authorization.

20.     Defendants receives some or all of the revenues from the sale of the services advertised on Exhibit A, and Defendants profits and benefits from the sale of said services advertised on Exhibit A.

21.     Plaintiff did not give Defendants "prior express invitation or permission" to send the fax.

22.     On information and belief, Defendants faxed to at least forty recipients' telephone facsimile machines the same and/or substantially similar unsolicited facsimiles without prior express invitation or permission, and without the required opt-out language as required by 47 U.S.C. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4), thereby precluding Defendants from successfully invoking the affirmative defense of established business relationship.

5

23.     There is no reasonable means for Plaintiff (or any other class member) to avoid

receiving unauthorized fax advertisements. Fax machines are left on and ready to receive the

urgent communications their owners desire to receive.

24.     Defendants' facsimile attached as Exhibit A does not display a proper opt-out

notice as required by 47 C.F.R. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4).

## CLASS ACTION ALLEGATIONS

25.     In accordance with Fed. R. Civ. P. 23(b)(3), Plaintiff brings this class action

pursuant to the TCPA, on behalf of the following class of persons:

> All persons who (1) on or after four years prior to the filing of this action,
> (2) were sent telephone facsimile messages of material advertising the
> commercial availability or quality of any property, goods, or services by
> or on behalf of Defendants, (3) from whom Defendants did not obtain
> "prior express invitation or permission" to send fax advertisements, or (4)
> with whom Defendants did not have an established business relationship,
> or (5) where the fax advertisements did not include an opt-out notice
> compliant with 47 C.F.R. § 64.1200(a)(4).

Excluded from the Class are Defendants, its employees, agents and members of the Judiciary.

Plaintiff seeks to certify a class which includes, but is not limited to, the fax advertisement sent

to Plaintiff. Plaintiff reserves the right to amend the class definition upon completion of class

certification discovery.

26.     Class Size (Fed. R. Civ. P. 23(a)(1)): Plaintiff is informed and believes, and upon

such information and belief avers, that the number of persons and entities of the Plaintiff Class is

numerous and joinder of all members is impracticable. Plaintiff is informed and believes, and

upon such information and belief avers, that the number of class members is at least forty.

27.     Commonality (Fed. R. Civ. P. 23(a)(2)):  Common questions of law and fact

apply to the claims of all class members. Common material questions of fact and law include, but

are not limited to, the following:

6

(a)     Whether the Fax and other faxes sent during the class period constitute advertisements under the TCPA and its implementing regulations;

(b)     Whether Defendants meets the definition of "sender" for direct TCPA liability, meaning a "person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement," 47 C.F.R. § 64.1200(f)(10);

(c)     Whether Defendants had prior express invitation or permission to send Plaintiff and the class fax advertisements;

(d)     Whether the Fax(es) contain an "opt-out notice" that complies with the requirements of § (b)(1)(C)(iii) of the Act, and the regulations promulgated thereunder, and the effect of the failure to comply with such requirements;

(e)     Whether Defendants should be enjoined from faxing advertisements in the future;

(f)     Whether Plaintiff and the other members of the class are entitled to statutory damages; and

(g)     Whether the Court should award treble damages.

28.     Typicality (Fed. R. Civ. P. 23(a)(3)):  Plaintiff's claims are typical of the claims of all class members. Plaintiff received the same or similar faxes as the faxes sent by or on behalf of Defendants advertising the commercial availability or quality of Defendants' property, goods, or services during the Class Period. Plaintiff is making the same claims and seeking the same relief for itself and all class members based upon the same federal statute.  Defendants have acted in the same or in a similar manner with respect to Plaintiff and all the class members by sending Plaintiff and each member of the class the same or similar faxes or faxes which did not contain the proper opt-out language or were sent without prior express invitation or permission.

29.     Fair and Adequate Representation (Fed. R. Civ. P. 23(a) (4)):  Plaintiff will fairly

and adequately represent and protect the interests of the class. It is interested in this matter, has

no conflicts, and has retained experienced class counsel to represent the class.

30.     Predominance and Superiority (Fed. R. Civ. P. 23 (b) (3)):  Common questions of

law and fact predominate over any questions affecting only individual members, and a class

action is superior to other methods for the fair and efficient adjudication of the controversy

because:

(a)     Proof of the claims of Plaintiff will also prove the claims of the class

without the need for separate or individualized proceedings;

(b)     Evidence regarding defenses or any exceptions to liability that Defendants

may assert and attempt to prove will come from Defendants' records and will not require

individualized or separate inquiries or proceedings;

(c)     Defendants have acted and are continuing to act pursuant to common

policies or practices in the same or similar manner with respect to all class members;

(d)     The amount likely to be recovered by individual class members does not

support individual litigation. A class action will permit a large number of relatively small

claims involving virtually identical facts and legal issues to be resolved efficiently in one

proceeding based upon common proofs; and

(e)     This case is inherently manageable as a class action in that:

(i)     Defendants identified persons to receive the fax transmissions and

it is believed that Defendants and/or Defendants' agents' computers and business

records will enable Plaintiff to readily identify class members and establish

liability and damages;

(ii)     Liability and damages can be established for Plaintiff and the class with the same common proofs;

(iii)    Statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or a similar manner;

(iv)    A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort and expense;

(v)     A class action will contribute to uniformity of decisions concerning Defendants' practices; and

(vi)    As a practical matter, the claims of the class are likely to go unaddressed absent class certification.

**Claim for Relief for Violation of the TCPA, 47 U.S.C. § 227 *et seq.***

31.    The TCPA makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement . . . ." 47 U.S.C. § 227(b)(1)(C).

32.    The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227 (a) (5).

33.    **Opt-Out Notice Requirements.** The TCPA strengthened the prohibitions against the sending of unsolicited advertisements by requiring, in § (b)(1)(C)(iii) of the Act, that senders of faxed advertisements place a clear and conspicuous notice on the first page of the transmission that contains the following among other things (hereinafter collectively the "Opt-Out Notice Requirements"):

(1)    A statement that the recipient is legally entitled to opt-out of receiving future faxed advertisements – knowing that he or she has the legal right to request an opt-out gives impetus for recipients to make such a request, if desired;

(2)    A statement that the sender must honor a recipient's opt-out request within 30 days and the sender's failure to do so is unlawful – thereby encouraging recipients to opt-out, if they did not want future faxes, by advising them that their opt-out requests will have legal "teeth";

(3)    A statement advising the recipient that he or she may opt-out with respect to all of his or her facsimile telephone numbers and not just the ones that receive a faxed advertisement from the sender – thereby instructing a recipient on how to make a valid opt-out request for all of his or her fax machines;

(4)    The opt-out language must be conspicuous.

The requirement of (1) above is incorporated from § (b)(D)(ii) of the Act. The requirement of (2) above is incorporated from § (b)(D)(ii) of the Act and the rules and regulations of the Federal Communications Commission (the "FCC") in ¶ 31 of its 2006 Report and Order, 21 F.C.C.R. 3787, 2006 WL 901720, which rules and regulations took effect on August 1, 2006). The requirements of (3) above are contained in § (b)(2)(E) of the Act and incorporated into the Opt-Out Notice Requirements via § (b)(2)(D)(ii). Compliance with the Opt-Out Notice Requirements is neither difficult nor costly. The Opt-Out Notice Requirements are important consumer protections bestowed by Congress upon the owners of the telephone lines and fax machines giving them the right, and means, to stop unwanted faxed advertisements.

34.    **2006 FCC Report and Order.** The TCPA, in § (b)(2) of the Act, directed the FCC to implement regulations regarding the TCPA, including the TCPA's Opt-Out Notice

Requirements and the FCC did so in its 2006 Report and Order, which in addition provides among other things:

> (1).    The definition of, and the requirements for, an established business relationship for purposes of the first of the three prongs of an exemption to liability under § (b)(1)(C)(i) of the Act and provides that the lack of an "established business relationship" precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶ 8-12 and 17-20);

> (2).    The required means by which a recipient's facsimile telephone number must be obtained for purposes of the second of the three prongs of the exemption under § (b)(1)(C)(ii) of the Act and provides that the failure to comply with these requirements precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶ 13-16);

> (3).    The things that must be done in order to comply with the Opt-Out Notice Requirements for the purposes of the third of the three prongs of the exemption under § (b)(1)(C)(iii) of the Act and provides that the failure to comply with these requirements precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶ 24-34);

35.    **The Fax**. Defendants sent the Fax on or about March 24, 2020, via facsimile transmission from telephone facsimile machines, computers, or other devices to the telephone lines and facsimile machines of Plaintiff and members of the Plaintiff Class. The Fax constitutes an advertisement under the Act and the regulations implementing the Act. Defendants failed to comply with the Opt-Out Requirements in connection with the Fax. The Fax was transmitted to persons or entities without their prior express invitation or permission and Defendants are precluded from sustaining the established business relationship affirmative defense with Plaintiff

and other members of the class because of the failure to comply with the Opt-Out Notice Requirements. By virtue thereof, Defendants violated the TCPA and the regulations promulgated thereunder by sending the Fax via facsimile transmission to Plaintiff and members of the Class. Plaintiff seeks to certify a class which includes the Fax and all others sent during the four years prior to the filing of this case through the present

36.    **Defendants' Other Violations.** Plaintiff is informed and believes, and upon such information and belief avers, that during the period preceding four years of the filing of this Complaint and repeatedly thereafter, Defendants have sent via facsimile transmission from telephone facsimile machines, computers, or other devices to telephone facsimile machines of members of the Plaintiff Class other faxes that are the same or substantially similar to the Fax that were transmitted to persons or entities without their prior express invitation or permission and Defendants are precluded from sustaining the established business relationship affirmative defense with Plaintiff and other members of the class because of the failure to comply with the Opt-Out Notice Requirements.  By virtue thereof, Defendants violated the TCPA and the regulations promulgated thereunder. Plaintiff is informed and believes, and upon such information and belief avers, that Defendants may be continuing to send unsolicited advertisements via facsimile transmission in violation of the TCPA and the regulations promulgated thereunder, and absent intervention by this Court, will do so in the future.

37.    The TCPA provides a private right of action to bring this action on behalf of Plaintiff and the Plaintiff Class to redress Defendants' violations of the Act, and provides for statutory damages. 47 U.S.C. § 227(b)(3). The Act also provides that injunctive relief is appropriate. *Id.*

38.    The TCPA is a strict liability statute, so Defendants are liable to Plaintiff and the other class members even if its actions were only negligent.

39.     Defendants knew or should have known that (a) Plaintiff and the other class members had not given prior express invitation or permission for Defendants or anybody else to send faxes advertising the commercial availability or quality of Defendants' property, goods, or services; (b) Plaintiff and the other class members did not have an established business relationship with Defendants; (c) Defendants transmitted advertisements;  (d) the Fax does not contain the required Opt-Out Notice, thereby precluding the affirmative defense of established business relationship; and (e) Defendants' transmission of fax advertisements without prior express invitation or permission was unlawful.

40.     Defendants' actions injured Plaintiff and the other class members. Receiving Defendants' junk faxes caused Plaintiff and the other recipients to lose paper and toner consumed in the printing of Defendants' faxes. Moreover, Defendants' fax advertisements used Plaintiff's and the other class members' telephone lines and fax machines. Defendants' faxes cost Plaintiff and the other class members time, as Plaintiff and the other class members and their employees wasted their time receiving, reviewing, and routing Defendants' unauthorized faxes. That time otherwise would have been spent on Plaintiff's and the other class members' business or personal activities. Defendants' faxes intruded into Plaintiff's and other class members' seclusion and violated their right to privacy, including their interests in being left alone.  Finally, the injury and property damage sustained by Plaintiff and the other class members from the sending of Defendants' advertisements occurred outside of Defendants' premises.

WHEREFORE, Plaintiff, MARC IRWIN SHARFMAN, M.D., P.A., individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, BIOSERENITY INCORPORATED and SLEEPMED INCORPORATED, jointly and severally, as follows:

A.      That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.      That the Court award actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater, and that the Court award treble damages of $1,500.00 if the violations are deemed "willful or knowing";

C.      That Court enjoin Defendants from additional violations; and

D.      That the Court award pre-judgment interest, costs, and such further relief as the Court may deem just and proper.

Respectfully submitted,

MARC IRWIN SHARFMAN, M.D., P.A.,
individually, and as the representative of a class of
similarly-situated persons

By:     /s/ Ryan M. Kelly
       Ryan M. Kelly – FL Bar No.: 90110
       ANDERSON + WANCA
       3701 Algonquin Road, Suite 500
       Rolling Meadows, IL  60008
       Telephone:  847/368-1500 / Fax:  847/368-1501
       Email:  rkelly@andersonwanca.com